# Bank of Kentucky *vs* Thornsberry.

### APPEAL FROM THE JEFFERSON CIRCUIT.

*Banks. Specie payments. Penal statutes.*

CHIEF JUSTICE EWING delivered the opinion of the Court—JUDGE MARSHALL did not sit in this case.

DEBT.

Case 139.

June 2.

THIS is an action of debt, brought by Thornsberry against the Bank, for specie, on twelve one hundred dollar notes, issued by the Bank, and twelve per cent. damages per annum thereon, on a demand for specie, which is alledged to have been made, and a refusal of the Bank to make payment.

It was proven that after the Bank had suspended specie payments in 1837, that the plaintiff stated to his neighbor, the witness, that he had twelve hundred dollars of the notes of the Bank, which he *intended to put on twelve per cent. interest*, and asked him to go with him to the Bank for the purpose of making a demand; that the plaintiff and himself, being in Louisville on the 2d December, 1837, they went into a private room and took down the dates, numbers, and amounts of the notes, and they then went into the back room in the banking house, where they found Gwathmey, the Cashier, sitting, and after the usual compliments had passed, and they had taken seats, the plaintiff took out of his pocket book the notes in question, and handed them to the Cashier, who examined them, counting them over, and when he had done so,

The case stated and proof.

handed them back to the plaintiff, and while his hand
was extended in the act of giving them back, the plain-.
tiff said, ''I want the specie;'' the Cashier replied, ''we are
not paying specie,'' or ''you know we are not paying spe-
cie,'' which form of expression the witness did not recol-
lect.  The plaintiff took the notes without further remark
as to specie, and put them in his pocket book, and asked
the Cashier how he liked the cider and apples he had sent
him, and a familiar and friendly conversation ensued;
and after the witness had inquired of the Cashier about
some rent that was between them, they retired and went
again into a private room, and he made and signed a
written statement, under a list of the notes, as a means
of identification, and proved that the notes sued on were
the notes presented for payment.  The witness further
stated, that the list was not shown to the Cashier, nor
was any thing said to call his attention to the fact, that
he was a witness to the demand, ''and he thought, when
they left, that the Cashier did not understand that the
plaintiff intended to sue or put the Bank on twelve per
cent. interest, and if. it had been him, that he would have
been more explicit.''

He further stated that there was a front room of the
Bank, in which there was a circular counter, where the
Clerks kept the books, and where the money was paid
into the Bank and out of the Bank, and opposite the back
room door, where the Cashier was, there was a passage
by raising a falling leaf in the counter, and he did not rec-
ollect whether they approached the room in which the
Cashier was, by passing in at the front door, or through a
back door, but he thought they passed through the front
door.  He was certain that no demand was made of the
Teller or any other in the front room.  The Bank intro-
duced the Cashier, who stated, in substance, that after
taxing his utmost memory, he had not the slightest recol-
lection of the demand stated.  That the Bank had sus-
pended specie payments in May, 1837, and that there
were but two demands for specie during that suspension,
both of which claims were paid, the one by himself, vol-
untarily, the other under the direction of the Directors,
who had a meeting on the subject, and he was repeatedly

asked by them whether any demand had been made for specie, and uniformly replied in the negative; that the Bank had at the time on hand near $800,000 in specie, in the Bank and Branches, and resumed specie payments in June following. He further stated, that he and the plaintiff were old acquaintances and frequently joked each other. He stated that the banking house was attached to a family residence, and he and family resided in the house; that the back room, described by the plaintiff's witness, was the Directors' room, and where he generally stayed and transacted the correspondence of the Bank, and where the discount book for bills of exchange was kept at that time. All money paid into or out of Bank was paid to or by the Teller, in the front room, where he had his place at the right hand side of the counter, where he kept all notes and demands against the Bank, and his cash for the business of the day; that persons wishing to speak to him on private business, or on their own business with the Bank, were in the habit of coming into the said back room where he stayed; that it was known to all who transacted business with the Bank, that the money was received and paid out by the Teller, in the front room, and that he, the Cashier, was not the officer to receive and pay out the money of the Bank, and if a demand had been made of the Teller, and it had been referred to him, which it was his custom to do for advice, if any thing occurred out of the usual way, he would have reported it to the President and Directors; that the plaintiff's claim was not known to any of the officers of the Bank, to his knowledge, until about the time this suit was instituted; that he never understood that the demand was made of him or he would have reported it to the Directors, as it was his duty to have done; and he never did report it, because he never did understand that a demand was made, according to his best recollection and belief. It seems that the plaintiff held on to the bills without further notice to the Bank, or making any further effort to obtain payment, though he lived in the vicinity through the whole period of the Bank's first resumption of specie payments, and nearly through the second suspension, for about four years before he commenced suit,

BANK OF KY.
*vs*
THORNSBERRY.

and now asks a recovery not only of twelve per cent. per annum, in damages, but also six per cent. per annum interest.

The instructions moved by the Bank in the Circuit Court.

The Bank having paid down the money in Court, for the amount of the bills, moved the Court for several instructions—the substance of such as are necessary to be noticed, are as follows: 1st. That the demand proven was not sufficient to entitle the plaintiff to recover the twelve per cent. damages. 2d. That if the jury believe that the defendants had a large banking room in the city, with a counter, Clerks, Teller, &c. where the money was paid into Bank and out of Bank, by the Teller, and where all such business was done, and that the banking room was of notoriety, and known to the plaintiff, that in that case the defendants are not liable to twelve per cent. damages, unless the bills had been presented in the large front banking room, and to the proper officer, and that a presentation and demand of the Cashier, in the back room, will not entitle him to recover the damages. 4th. That if they believe that the presentation was made to the Cashier, in the back room, in such a way and manner as not to apprise that officer of the object of the presentation, or that a demand was thereby made, intending to render the Bank liable for its failure or refusal to pay the bills in specie, that in that case they cannot find for the plaintiff twelve per cent. per annum in damages.

Instructions asked by the Bank overruled in the Circuit Court, and instructions given for plaintiff.

The Court overruled all the instructions offered, and gave the following: "That a demand of payment during banking hours, of *any of the officers* of the Bank, in *any* of the *rooms occupied* by *any* of the *officers*, for the transection of the business of the Bank, was sufficient to render the Bank liable for the twelve per cent. damages, given by the act of incorporation. But the demand ought to be intelligible and such as ought to apprise the officers of whom it was made, that the notes were presented for payment and specie required—that an unintelligible demand would not be sufficient."

After the jury retired, they returned into Court, and asked leave to ask the plaintiff's witness a question, which being granted, the witness was asked if he believed that Gwathmey, the Cashier, did understand that spe-

cie was demanded of him by the plaintiff; which was objected to by one of the defendants' counsel and insisted on its being answered by the other, and the jury informed by the Court that they had nothing to do with the witness' belief: yet the witness answered, that he would have understood that specie was demanded, if it had been made of him. The jury having returned a verdict for $647 in damages, and a motion made by the plaintiff's counsel for judgment for six per cent. per annum interest on the $1200, from the time of the demand, in addition to the damages found, overruled, and a judgment rendered for the damages aforesaid, the Bank has appealed to this Court.

The 5th section of the act incorporating the Bank, provides: "The said Bank shall not, at any time, suspend, fail or refuse payment in gold or silver, of any of its notes, bills or other obligations due and payable, or any moneys on deposit; and in case the officers, in the usual banking hours, at the office of discount and deposit, where the same shall be payable, shall refuse or unreasonably delay payment in gold or silver of the amount of any note there demandable and presented for payment, or the payment of any money previously deposited at such office, and then due and demandable by any person or persons entitled to receive payment of the same, said Bank shall be liable to pay damages at the rate of twelve per cent. per annum on the amount thereof, from the time of such failure, refusal or delay, until payment thereof: and for such failure or refusal, or for any violation of this charter, the same shall be forfeited, and a *scire facias* shall be sued out in the name of the Commonwealth by the Attorney General, and such proceedings be had as to declare such forfeiture by the judgment of a Court; and from and after the judgment of forfeiture, said corporation shall cease to exercise any of the powers and privileges hereby granted: *Provided*, Said forfeiture shall not be construed to prevent said Bank from suing and being sued, and continuing its operations for the purpose of closing its concerns; nor from making any contracts that may be convenient and proper for that purpose."

BANK OF KY.
*vs*
THORNSBERRY.

The 5th section of the act incorporating the Bank of Ky. (*St. Law*, 202,) is highly penal. A demand, therefore, for specie, should not only be made in proper time, of the proper officer, & at the proper place, but intelligible and unequivocal, and apprize the officer of whom made, certainly and unquestionably, of the object and intention of the demand.—

And the demand must be made of the officer whose duty it is to pay, or to direct or refuse payment.

It will be perceived that this section is highly penal. It not only subjects the Bank to twelve per cent. damages per annum, from the time of the demand, so long as the bills upon which a demand is made, may be held up, and that without any other notice or further effort to obtain the specie, and that too though the Bank may resume specie payments the next day, and continue the payment of notes presented at its counter: but is also subjected to a forfeiture of its charter for such failure or refusal. The demand, therefore, should not only be made within the proper time, of the proper officers, and at the proper place, but should also be so positive, intelligible, and unequivocal, as to apprise the officer of whom it is made, certainly and unquestionably, of the object and intention of the demand.

And though the act, in general terms, provides that "in case the *officers*, in the usual banking hours, &c. refuse or unreasonably delay payment, &c." the act could not have meant any subordinate officer of the institution, who had no power or control over the money, and consequently no power to make or refuse payment, but must have had reference to those whose business it was to pay or to direct or refuse the payment, otherwise a Carrier, Butler or Clerk, might have it in his power to subject the Bank not only to the heavy damages demanded but also to a forfeiture of all its incorporated privileges. The instruction of the Court was, therefore, certainly too general in authorizing a recovery upon a demand made of any of the officers of the Bank. But this might not be deemed prejudicial to the defendant in this case, as the demand was made of the Cashier, who, although it seems not to be his business to pay out and receive money at the counter, must be presumed to have some control over the cash, if the demand in other respects was sufficient.

The Chief Justice strongly inclines to the opinion, that the demand, to be good, should have been made at the counter in the front room, it being the place notoriously known as the place where money was paid out and received, as well as the public room in which all public business with the Bank, in banking hours, was attended to. It is true that the statute does not distinctly specify

the public banking room as the place where the demand shall be made, but it provides that the demand shall be made in *banking hours,* and at the office of discount and deposit, *where* the *same* shall *be payable,* and if the officers "shall refuse or unreasonably delay payment in gold or silver, of the amount of any note *there demandable* and *presented for payment,*" &c. Now, though the Legislature did not descend to the particularity of designating the public business room as the place where the notes of the Bank should be presented for payment, it appears to him pretty evident, that they could not have looked to a back room, where the notes of the Bank were never paid, or to any other room or place than at the counter of the public room, where, according to the universal custom of Banks, their notes are presented and money paid out, as the place intended for the presentation and demand of payment in the provisions of the section under consideration. At what particular place are the notes *payable,* or are they *demandable,* or are they to be *presented* for payment? Though they express on their face, to be payable on demand at a designated Bank or Branch, it is believed to be the universal understanding that they are to be presented, and are demandable and payable at the counter of the public business room of the Bank; and it is believed that no one who goes in good faith to present a note, or demand payment, or with an honest intention to receive it, will go to any other room than the public room set apart for transacting business of that kind. May it not be then well questioned, whether the Legislature, in the enactment of the 5th section, being, as it must be presumed, well apprized of the universal custom, did not look to the public business room as the place where notes were *presentable* and *payable,* and consequently the place where the demand should be made. And is not this conclusion strengthened by the consideration, that they required the demand to be made "in the usual banking hours," as during this period the doors of the public room are always kept open, and closed when it expires? And the private rooms, it is believed, are never open and closed at stated periods, so that a demand might be made in them, as well out of as in banking hours, and if payment

BANK OF KY.
*vs*
THORNSBERRY.

is to be made there, it may be made as well after or be-fore, as during banking hours.  Again, as a demand must have been required by the Legislature, with a view to payment, and not to a forfeiture, or to the damages de-nounced, they must have looked to and intended the place where payment, by the universal custom, was made as the place of demand.

But waiving this position, as the Court do not concur in it, we are clearly of opinion, that had the demand been made at the counter of the public room, and of the officer whose business it was to pay, there would have been much less ground for misapprehension and imposi-tion.  The object could not have been misunderstood or misconceived, had the demand been made at the customa-ry place and in the usual manner.  Had the officer whose especial business it was to attend to such calls, and who was then at his place, been applied to, and the notes handed to him or thrown on the counter and their pay-ment demanded, he, in all reasonable likelihood, could not have misunderstood the object, nor could his attention have been diverted from the object by a deceptious allu-sion to the cider and apples which he had sent to his friend and old acquaintance, Gwathmey; and his object being understood, the matter would have been laid be-fore the Directory, and it is most likely he would have gotten the cash, which it is obvious he did not want.  Be this as it may, it is certain that the demand would have been noted, and payment made by the following June, and the corporation saved from the large amount of dama-ges which he, by quietly lying by for four years, seeks to subject it.

The proper place for the demand of specie of a Bank, is at the counter of the Bank, of the pay-ing and receiving officer of the Bank in banking hours.—

We are perfectly satisfied that he did not want the spe-cie, but his object and intention was to put the Bank "on *twelve per cent. interest,*" as he declared to his friend and witness.  This being manifestly his object, we should look with a stricter scrutiny into the character of the de-mand which he made, believing as we must do, that he went to the Bank with a view to accomplish that object and not to get the specie, which could alone be effected by making a *formal* demand: yet making it in such man-ner as to delude and deceive the officer of whom it was

made, as to his object; this may furnish a clue to his reasons for passing through the front room, where he knew the money would be paid, if paid at all, and seeking his old acquaintance, Gwathmey, with whom he was in the habit of jesting, and to whom he had sent apples and cider, hoping that he might delude him by leaving the impression upon his mind that he was in jest as to his demand for specie, or divert his attention from the secret object of his visit, by an immediate allusion to the cider and apples which he had sent him, and by engaging him in a friendly conversation about them, and on other topics.

We feel certain, that to render a demand good and efficacious against the Bank, when made of the officer and in the place, and under the circumstances shown, that it should have been certain, distinct, intelligible, and unequivocal, in manner and matter, and such as would have apprised the officer certainly, that the real intention was to demand and obtain the specie, and should not have been illusory, deceptive, or equivocal in manner or matter. If Gwathmey was deluded and deceived, and did not, in fact, understand that the payment of specie was in reality required, or if asked, that it was asked in jest, or waived by not being insisted on, or by taking back the money and quietly placing it in his pocket book, and immediately introducing another topic of friendly conversation; in such case the plaintiff has no more right to avail himself of his own deception and imposition on the officer, than he would have the right to avail himself of a deception and imposition practised upon his neighbor in a private contract. In either case good faith and fair dealing is required, and deceit, imposition and fraud will not be tolerated. And though in the one case a *formal* demand be made, and in the other a *formal* annunciation of facts, yet if such demand or such annunciation of facts be attended with such circumstances or made in such a manner as to leave a false impression and delusion upon the mind of the officer or his neighbor, in the one case the demand and in the other the contract will be inoperative and void.

BANK OF KY.
*vs*
THORNSBERRY.

—And it shall be certain, distinct and unequivocal in manner and matter, such as would apprize the officer that the real intention was to demand and receive the specie.

The Bank can no more be bound by a deceit and imposition practised upon its officer in the demand than one neighbor would be bound by a deceit and imposition practised upon another. The consequences to the Bank, as has been said, is highly penal, much more so than the injury inflicted, in the general, by deceit in a private contract. The Bank has, therefore, the right, before it can be made responsible, to require that the demand shall have been made in so distinct and unequivocal a manner as to enable the officer to understand, certainly, that specie was required and insisted on.

We are satisfied that Gwathmey did not understand that specie was insisted on, and that he was mislead, deluded and deceived, by the language, manner, and conduct of the plaintiff, and further, that he intended to delude and deceive him.

The plaintiff's own witness says, when they left the Bank, "that he thought that Gwathmey did not understand that the plaintiff intended to sue or to put the Bank on twelve per cent. interest, and if it had been him that he would have been more explicit." And though he says, when he is called back and asked by the jury whether he thought "that Gwathmey did understand that specie was demanded of him," answered, "that he would have understood it to be a demand for specie, if it had been made of him:" yet this statement may be entirely consistent with his first statement. He, from his participation in and knowledge of all the preceding facts, might well have understood that specie was demanded, and Gwathmey, from whom those facts and preparations to put the Bank on twelve per cent. interest were concealed, have not understood it. Had he known those facts, or had an intimation of any of them, he too would have understood that specie was demanded, and could not have been deluded by the deceptious manner of the plaintiff.

We think, therefore, upon a view of the whole case, that the fourth instruction, as we understand it, should have been given, or at any rate given with a very slight modification, as to the limited *intention* expressed for making the demand; and that the instructions given

were misleading, and not so expressed as to present the points of law involved fairly and fully before the jury. The demand made of *any of the officers* of the Bank, was too broad, and the latter branch of the instruction should have been more full and explicit, as will be seen from the views taken in this opinion.

The demand, to be good and effectual, should not only be intelligible, and such as *ought* to apprise the officers of the Bank that the notes were presented for payment, but such as *would* and should, in manner and matter, *unequivocally* and *certainly* apprise them, or him, of whom the demand is made, of that fact, or of the real object and intention of the presentation; and the more espe cially in a case like the present, where the demand is made in the back room, and of the officer of whom it was made.

If the demand was not so made, he is not entitled to the twelve per cent. damages, nor to interest; and if it was so made, he is not entitled to six per cent. interest in addition to the twelve.

The judgment of the Circuit Court is, therefore, reversed, and cause remanded, that a new trial may be granted without the payment of costs; and appellant is entitled to costs in this Court.

*Guthrie* for appellant: *Pirtle* for appellee.

*[margin:]* A demand duly made, for specie, & refused, entitled the holder of the note to 12 per cent.—if not so made and refused, to no interest.